Good afternoon. Joseph Siguenza for Petitioner. In my brief presentation today, Your Honor, I'd like to focus on whether the I.J.'s findings of adverse credibility were supported by substantial evidence in the record. Petitioner submits that they were not. The I.J. appears to focus in the record on three bases for the adverse finding, credibility finding, rather. The lack of inclusion of information that Petitioner testified to in the hearing, as opposed to what was in his asylum application. But in this instance, it wasn't just information. It was the entire basis for his claim of asylum that was changed. Is that right? That's correct, Your Honor. However... It's very different than the usual case where they say, well, you left this out, you left that out. He said nothing at all in his application about this mixed marriage problem, mixed heritage problem as being a problem of any kind. Petitioner submits that there was testimony that when he prepared his asylum application, he did it without the benefit or assistance of an attorney. But that's not very persuasive. I mean, if his family for many, many years had been persecuting him because, or if the community had been persecuting him because of his mixed heritage, it wouldn't be a secret from him. Well, Petitioner would submit that the omission is, should not be the basis for an adverse inference on credibility, simply because we're dealing with a layperson from a different country and who may not be familiar with the requirements of asylum in the United States. And in good faith, set forth what he believed on his own without assistance of any third party as to what he believed would entitle him to remain in the United States. After he consulted with an attorney, a reasonable inference is that he, for the first time, found out that he could claim more than what he put in his asylum application as a legal basis for entitlement to remain in the United States. So in that respect, I don't think that we submit that Petitioner should not be penalized for proceeding in good faith in filling out an asylum application on his own and then having the benefit, fortunately, of counsel somewhere down the line. The second basis for the IJ's adverse finding was that there was concern that there was no corroborating evidence, specifically proof of mixed racial heritage. Secondly, no police reports were produced. And thirdly, proof of his birth or his birth certificate. And I believe that with respect to the last item, Petitioner testified that the birth certificate, his birth certificate, rather, was not unfortunately brought with him to court, but it was at home, at home being in the United States. With respect to the mother's birth certificate and the police reports, Petitioner initially submits that corroborating evidence, as the circuit, as Your Honor knows, is familiar with, rather, is not necessarily required if the testimony is consistent and detailed and plausible with the asylum application and testimony in court. Petitioner would submit that corroborating evidence in this particular case is not warranted. However, if it was a concern to the court and a real concern, there was no evidence in the record as to whether or not the mother's birth certificate was reasonably ascertainable or obtainable by Petitioner. The record is bare on that matter. Police reports, testimony by the Petitioner has indicated that there was at a minimum official indifference by the police authorities in either investigating or following up on complaints or reports by Petitioner to the authorities of his problems within his village with his extended family or clan. The third, rather, officer, the third basis for the adverse credibility finding concerns his testimony about. Can I go back to the application for asylum? Certainly. It seems to me to be the only significant issue. He was asked whether have you or any member of your family ever been mistreated or threatened by the authorities of your home country or any other country or by a group of groups that are controlled by the government or that the government of the country is unable or unwilling to control, and he said no. Yes. But, again, that was. That's not a question of identifying the ground for asylum. It's whether he was persecuted at all by anybody. Yes, but to expect or to anticipate that a layperson in Petitioner's position would understand, for instance, the meaning of the word persecution. It doesn't say persecution. It says mistreated or threatened, presumably for that very reason.  I misinterpreted. I apologize. Petitioner would submit that the fact that he did fill it out himself, even though it appears to us, to the court and to counsel, that may be a straightforward question. To presume that someone in Petitioner's position would be able to understand and bring to bear by way of the application all the incidents in Fiji that he's experienced, traumatic events that he's experienced, would seem to be unreasonably honored with you. I would submit that Petitioner did the best he could under the circumstances. He was an English speaker. Is that correct? No. He had an interpreter at the hearing, Your Honor. So he would have someone read that to him and then he would answer? Your Honor, there's nothing in the record that indicates whether he had the benefit of someone reading back the application to him or the circumstances in which it was prepared. So I'm not able to speak to that in the record. So he didn't fill this out by himself because the – Pardon me? So he must not have filled it out by himself because the English, the application is spelled out in very good English. That I don't believe there's any evidence in the record as to who assisted him in preparing it. I don't recall seeing the signature of any third party indicating that they assisted him in the preparation of the application. He would have to have had someone read it to him because he did not read or write English? Well, I can't – frankly, I can't recall, Your Honor, whether or not – the extent of his fluency in either reading or writing English. And I apologize for that. But I don't know whether it was a situation where he did – he did understand some English and was able to speak some English and write some English or whether he, in fact, had the benefit of a third party to help him and that third party, for whatever reason, didn't sign off on the application. It doesn't say that anybody else filled it out, but it had to be somebody who spoke good English. Well, I have a note here that says that he said that he filled it out himself without an attorney. That's not the case? Yes, I do recall, Your Honor, that that's his testimony on the record. However, I don't know – well, it's not that I don't know, but I believe that the record does not contain any evidence whether or not someone actually assisted him. He assisted him somehow and didn't sign off. He did testify in English. Pardon me? He testified in English. I'm sorry? He did testify in English. Okay. I correct myself. I stand corrected. I'm sorry. I don't mean to misstate the record, but – Well, I'm at least at one hearing. Let me just check and see if that's true. I don't know. Okay. Go ahead. Okay. With respect to this application and the preparation of it, I – Petitioner would submit that whether or not he had the assistance of somebody, if it wasn't an attorney or someone who was familiar with the standards of asylum before the immigration court, that he should not be – He testified throughout in English. And he also says he was a priest of the Anglican Church, so it's no surprise that he was able to write pretty well, and he did. Assuming, for the sake of argument, that that's the situation, again, we're dealing with a layperson who there's no evidence in the record that he has any familiarity with the legal system in the United States with respect to asylum, so he should not be held to a higher standard, so to speak, in terms of what to put in an asylum application. It's interesting to note, just to wrap up, that the heart of the claim is that he was threatened and assaulted and attacked by members of his clan, and that was not disputed, and there was no finding of adverse credibility by the IJ in that respect. It was only on collateral matters, such as the number of times he might have reported the matters to the police or investigated by the police, that I believe is a minor inconsistency of anything and doesn't go to the heart of the claim. The heart of the claim is that he testified that he was threatened and attacked on several occasions over a ten-year period by members of his clan, entitling him to protection under this asylum protection, rather, as a member of a particular social group. And I will submit the matter. Thank you very much. Thank you. Good afternoon, Your Honors. Carol Federighi for the respondent in this matter. Just to answer some of your questions about the application and petitioner's knowledge of English, on page 73 of the administrative record, the judge asks are we going to proceed in English at the hearing, and the answer was yes, so the hearing was in English, as Your Honors noted. On page 254, this is part of his asylum application, there's at the top, there's a question about what language he speaks and if he speaks English, and he checks that he was fluent in English. And at the hearing, on page 97 to 98, he was asked why, about the application and why it differed from his testimony, and he said he filled out the application himself and he had no attorney. So it appears that he did fill it out in English, and he does have claims to be fluent in English and seems to be actually fluent. As Your Honors, well, let me just back up. The immigration judge's opinion, decision should be affirmed because substantial evidence supports both the finding that petitioner was not credible as well as the alternative finding that even if credible, he did not meet his burden to show eligibility for asylum or other relief. On the adverse credibility issue, the immigration judge relied on basically three grounds for finding the petitioner not credible. First, the fact that he changed the basis for claiming asylum between the time of his application and the time of the hearing. It wasn't merely that he added more detail or supplemented what he said before, he completely changed the basis. In the original asylum application, he listed his race or ethnicity as Fijian. He gave as the reasons for seeking asylum, the poor Fijian economy, the political instability. This was after the riots and unrest and taking the head of the country hostage, all that. That occurred in 2000. And his sympathy for plight of Indo-Fijian family members. He himself, not being Indo-Fijian, he said nevertheless as a Christian, he would feel psychologically upset by what they were going to have to go through. He did say in the application that neither he nor any member of his family had ever been mistreated by the government of Fiji or by groups the government was unable to control. Then at the hearing, he now said his ethnicity is half Solomon Island or half Fijian.  Given that he had previously just said he was Fijian, it's reasonable for the immigration judge to therefore decide that he needed further corroboration of what exactly his ethnicity was. And Petitioner did not, was not able to come forward with any corroboration such as a birth certificate or a birth certificate of his mother, who he claims is the Solomon Islander. He gave now at the hearing his reasons for seeking asylum, that he actually had had past problems in Fiji, past mistreatment. This time, he claims he'd been mistreated by members of his own family on account of his mixed parentage. So not only is he citing a completely other basis, it actually contradicts his previous claim because before he was saying he felt sympathy for family members, and now it's those very family members that are the agents of his persecution, his alleged persecution. And again, he's also now contradicting what he said in the application about being mistreated in the past. The case law is clear that a credibility finding is not compelled where the petitioner changes the basis for his application between the time of the application and the time of the hearing. And I cite those cases in my brief. In this case, he was asked to explain why he changed the basis, so he was given an opportunity to address this issue, and all he said was that he had no attorney when he filled out the application. As Your Honors have recognized, he's fairly comfortable in English. The application is written to try and elicit the necessary information from the applicant. It's not trying to hide the questions, the real evidence from the applicant. Nevertheless, he never even hinted at any of these problems that he was claiming at the hearing. In addition to this major, major defect with his credibility, which by itself fully supports the immigration judge's adverse credibility finding, the immigration judge also noticed that he was very shifty and contradictory about how many times he reported the problems he was having with his family to the police. I cite the relevant excerpt on page 20 through 21 of my brief. It's also page 89 through 90 of the administrative record. If you read it, the judge is trying to get at how many times did you report this to the police and when. Simple questions, and yet if you read through, he keeps changing the dates and times, and it reads like something out of Alice in Wonderland or a Marx Brothers comedy skit. This information was important to his claim because he needs to show that the government acquiesced, or was unable to stop the persecution in order to make out actionable persecution under the INA. Therefore, the fact that he was unable to provide credible evidence on this point further impairs his asylum claim. In addition, he does admit that the police did try to address the situation in 1987, the first time he reported it. So the police were not inactive or did not avoid this situation. They did try and address it in 1987. Finally, the immigration judge noted that Petitioner did not provide any corroboration of any of his allegations. In this case, where the immigration judge had reason to doubt Petitioner's credibility, it is reasonable for him to require corroboration through documents or testimony of others, and he provided none of that. He didn't provide any documentation or evidence about his claimed ethnicity, which is key to his claim. He didn't provide any evidence of the police reports that he claimed to have made. He has four grown children that still remain in Fiji. Presumably, they should have been able to obtain birth certificates if he needed them or police reports. Turning now to the merits, the immigration judge found that in the alternative, even if Petitioner was credible, that he failed to meet his burden of showing eligibility for asylum. The immigration judge held that he failed to meet his burden on three distinct grounds. First, he failed to show that the persecution was by the government or by entities the government was unable or unwilling to control. He admitted as such on his asylum application when he stated, as your Honors have noted, that no one in his family had been mistreated by the government or by authorities that the government had been unwilling or unable to control. He also was unable to provide convincing evidence that he had reported it to the police and that the police had been unwilling to do anything. In fact, he admitted that they had done something. What he's complaining of here is merely a dispute between him and his family, a private dispute, and does not rise to the level of persecution that the Immigration Act is granting protection for. He also did not establish that he was actually a member of a protected group and that he was persecuted on that basis. Again, as I said before, he provided no evidence of his ethnicity, which in this case he needed to do since he had previously claimed to be Fijian. And he provided no evidence other than some conclusory statements that the dispute he had with his family was because of his alleged mixed parentage. Finally, and very conclusively, the immigration judge found that he could have relocated back to the city in which he had previously lived for 17 years, which was on an entirely different island, and he could have lived there safely before going back to his hometown, which was on one island of Fiji. He had worked previously on the main island in the main city for 17 years and had resided there safely with no incidents. There was no reason why he could not have moved back to that city after having run into problems with his family. So for all these reasons, Your Honors, the evidence does not compel a finding adverse to the immigration judge's decision, and we urge that it be upheld. Thank you very much. We submit the case. You have about seven seconds, and I'll give you a minute, and then we'll be done for the day. We'll finish. Yes. Thank you. Very quickly. The statements by the petitioner in his I-589 application, specifically that the coup resulted in political instability and economic troubles, can be interpreted as a general statement rather than something that was personal to the petitioner, again, given the fact that he filled this out on his own as a layperson. The IJ's comment that his motive or the motive of the persecutors could have been greed or personal animosity, we submit his speculation. There is evidence on the record that he was persecuted because of his membership in a particular social group, this particular plan. Fiji is a small island, population of approximately 750,000, and there was no evidence on the record as to whether or not it was reasonable or practical for a petitioner to relocate to some other part of the island, especially given the fact that we're talking about a clannish conflict and whether or not he could have actually relocated to another part of the island and feel safe. There's no evidence on the record on that. Okay. Thank you very much. Thank you. Appreciate your help.
judges: B. Fletcher, Leavy, Berzon